UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
OLVIN ORTIZ,

                    Petitioner,

**<u>MEMORANDUM & ORDER</u>**
09-CV-679 (PKC)

       v.

DAVID ROCK, SUPERINTENDENT,

                    Respondent.
------------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Olvin Ortiz ("Petitioner"), appearing *pro se*, petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence entered on February 28, 2005 in the Supreme Court of the State of New York, Suffolk County. Following a jury trial, Petitioner was convicted of one count of Murder in the Second Degree and sentenced to 25 years to life. Petitioner challenges his conviction on the following five grounds: (1) the prosecutor failed to prove his guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence; (2) he was denied a fair trial when the prosecutor elicited testimony that he was known by the nickname "Crazy"; (3) he was denied a fair trial based on the prosecutor's remarks during opening and closing statements; (4) his sentence was excessive and should be reduced; and (5) his appellate counsel was ineffective for failing to raise the following issues: (i) that the State court lacked subject matter jurisdiction when the indictment was amended, (ii) that the sentence imposed was not applicable to his offense, and (iii) that he was denied a jury trial when the State court sentenced him to the maximum term. For the reasons set forth below, the petition for a writ of *habeas corpus* is denied in its entirety.

# BACKGROUND

## A. Trial

### 1. Prosecution's Case

Viewed in the light most favorable to the prosecution,[1] the evidence it presented at trial would have permitted a reasonable juror to find as follows:

In the early hours of April 25, 2004, Petitioner got into a fight with Jose Umanzor ("Umanzor" or "the victim") outside of a bar called El Modello's in Brentwood, Long Island, allegedly over whether either man was a member of the "MS-13" gang. (Tr. 25, 28-29, 32-34.)[2] After Umanzor punched Petitioner in the mouth, drawing blood, Petitioner pulled a small knife with a blue handle from his pocket and chased Umanzor into the parking lot of a supermarket. (Tr. 34-35, 116-117.) There, Petitioner stabbed Umanzor twice: on the back of the right shoulder and to the inner part of the left upper arm. (Tr. 386, 395.) The latter cut went almost to the bone and extended to his elbow, severing a major artery. (Tr. 386, 395.) Petitioner ran back to the bar to retrieve his phone from the ground and left in a white Honda with Edwin Panameno and two others. (Tr. 36, 174.) Panameno took Petitioner to a mutual friend's home, where Petitioner attempted, with the mutual friend, to wash the blood off the outside of Panameno's car; Petitioner also washed the blood off his hands and knife. (Tr. 39-40, 175.) In the meantime, a friend of Umanzor's who

---

[1] The Court recites relevant facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

[2] Numbers preceded by "Tr." refer to the transcript of Petitioner's trial, which took place between February 7-10, 2005, before Judge Mullen in the Supreme Court of the State of New York, Suffolk County ("Suffolk County Supreme Court").

had been at the scene, Mark Hernandez, called the police. (Tr. 118-119.) Umanzor was taken to a hospital, where he died as a result of the blood loss from the two stab wounds. (Tr. 397.) The police did not find a weapon on Umanzor. (Tr. 101.)

Two days later, Panameno, who had been approached by the police, agreed to cooperate with their investigation and wear a recording device while in a car with Petitioner. (Tr. 41-43.) While being recorded, Petitioner told Panameno that he was aware that the victim had died, that he buried the knife, and that he was going to go to Costa Rica to avoid "25 years in jail." (Tr. 45-46.) Panameno and Petitioner were stopped by a police car, and Petitioner was arrested. (Tr. 162, 164, 263.) At the Third Precinct, Petitioner waived his Miranda rights and agreed to answer questions and make a statement. (Tr. 166-169, 178, 269-70.) Among other things, Petitioner told the police that after the fight in front of the bar, he ran after Umanzor, stabbing at him with the knife as he chased him, but that he stopped as soon as he was aware that he had cut him. (Tr. 174.) Petitioner accompanied the police to his friend's home to retrieve the buried knife. (Tr. 229-230.)

### 2. Defense's Case

The defense called two witnesses and Petitioner. The first defense witness, Detective Patrick Portela, testified that the police had briefly considered another individual named Pedro Rivera as the perpetrator. (Tr. 432-35.) On cross, however, Detective Portela testified that Rivera had been ruled out as a suspect after the police determined that Rivera was a friend of Umanzor who tried to administer first-aid to Umanzor at the scene. (Tr. 436, 439.) The second defense witness was a security guard at El Modello's bar, who testified that he saw one man chasing

another across the supermarket parking lot, but could not identify Petitioner as one of the men. (Tr. 451, 458.)

Finally, Petitioner took the stand and attempted to establish that he stabbed the victim out of self-defense. Petitioner testified that he became a member of La Mara Salvatrucha or the "MS-13" gang at age thirteen when he lived in El Salvador. (Tr. 474.) Petitioner testified that after arriving in the United States, he had been beaten and threatened by MS-13 gang members because he refused to join the gang in this country. (Tr. 490-93.) Petitioner testified that on April 25, 2004, Umanzor—whom Petitioner stated was among those who attacked and threatened him previously—punched him in the nose and mouth and knocked him down, and that others began to beat him outside the bar. (Tr. 494-95.) Petitioner testified that he "didn't have any choice. If I didn't do what I did, I was going to be killed. So, I took out my knife. I didn't want to kill anybody." (Tr. 496.) Petitioner testified that he was only "trying to get out from under the group that was beating me." (Tr. 520.) Petitioner also disputed the statement he gave to police as incomplete, in that it did not include information on how the fight started. (Tr. 518, 526, 529.)

### B. Verdict and Sentencing

On February 9, 2005, after an afternoon of deliberations, the jury found Petitioner guilty of one count of Murder in the Second Degree. (Tr. 690-92.) On February 28, 2005, Judge Mullen imposed an indeterminate sentence of 25 years to life. (S. 16.[3])

---

[3] Numbers preceded by "S." refer to the transcript of Petitioner's sentencing hearing before the Suffolk County Supreme Court on February 28, 2005.

### C. Pre-Trial Suppression Hearing

A pre-trial suppression hearing was held on December 1, 2004.[4] At the hearing, Detective DeJesus testified that he interviewed Panameno and that Panameno identified Petitioner from a photo array. (Supp. Hr'g 18-19, 23-24.) Detective DeJesus also testified that Panameno agreed to wear a wire and record his conversation with Petitioner. (Supp. Hr'g 29-30.) Judge Mullen held that the identification procedures used by police when Panameno and Hernandez identified Petitioner were not unduly suggestive, and that Petitioner's statements to Panameno in the car and to police at the precinct were admissible. (Supp. Hr'g Op. at 3.)

### D. Direct Appeal

Petitioner appealed his conviction to the Appellate Division, Second Department ("Appellate Division"), through counsel, on the following four grounds: (1) Petitioner's guilt was not proven beyond a reasonable doubt and the verdict was against the weight of the evidence; (2) Petitioner was denied a fair trial when the prosecutor elicited testimony that Petitioner was known by the nickname "Crazy"; (3) Petitioner was denied a fair trial based on the cumulative effect of the prosecutor's improper opening and closing statements; (4) Petitioner's sentence was unduly harsh and excessive. (*See generally* Pet'r App. Br.)

The Appellate Division affirmed Petitioner's conviction, holding that: (1) the evidence at trial was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt and the verdict

---

[4] Numbers preceded by "Supp. Hr'g" refer to the hearing minutes of Petitioner's December 1, 2004 pretrial suppression hearing before the Suffolk County Supreme Court. Numbers preceded by "Supp. Hr'g Op." refer to Judge Michael F. Mullen's December 23, 2004 decision following the suppression hearing.

was not against the weight of the evidence; (2) Petitioner's contention that he was denied a fair trial based on repeated references to his nickname was unpreserved for appellate review, but that any error in allowing such references was harmless; (3) Petitioner's contention that the prosecutor's remarks were improper was also unpreserved for appellate review, but that any improper remarks were also harmless error; (4) Petitioner was not denied effective assistance of counsel; and (5) Petitioner's sentence was not unduly harsh and excessive. *People v. Ortiz*, 846 N.Y.S.2d 370 (App. Div. 2007). On February 26, 2008, the New York Court of Appeals denied Petitioner's application for leave to appeal. *People v. Ortiz*, 10 N.Y.3d 769 (2008).

### E. State Collateral Attack

On March 4, 2011, Petitioner filed a *pro se* application for a writ of error *coram nobis* with the Appellate Division, alleging ineffective assistance of appellate counsel because appellate counsel failed to raise the following grounds on Petitioner's direct appeal: (i) that the State court lacked subject matter jurisdiction when the indictment was amended; (ii) that the sentence imposed was not applicable to his offense, and (iii) that he was denied a jury trial when the State court sentenced him to the maximum term. (Dkt. 26 (Pet. for Writ of Error Coram Nobis) at ECF 7-19.[5]) On October 18, 2011, the Appellate Division summarily denied the application, finding that Petitioner failed to establish that he was denied effective assistance of appellate counsel. *People v. Ortiz*, 931 N.Y.S.2d 882 (App. Div. 2011). On July 16, 2012, the New York Court of Appeals denied Petitioner leave to appeal. *People v. Ortiz*, 19 N.Y.3d 976 (2012).

---

[5] Citations to "ECF" pages refer to the page numbering of the Electronic Court Filing ("ECF") system, and not the document's internal page numbers.

### F.  Instant *Habeas* Petition

On February 12, 2009, Petitioner timely submitted the instant Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254.  (Dkt. 1.)  Petitioner raised the same four grounds for relief as he did in his direct appeal.  (Dkt. 1 at ECF 5-9, 17-22.)  On December 15, 2010, Petitioner requested that his petition be held in abeyance to allow him time to file a writ of error *coram nobis* in State court.  (Dkt. 19.)  The Court granted Petitioner's request.  (*See* Dkt. 20, 24.)  On August 30, 2012, Petitioner notified the Court that the New York Court of Appeals had denied his leave to appeal the *coram nobis* writ.  (Dkt. 26.)  The Court liberally construes this August 30, 2012 submission as a Supplemental Petition incorporating the three issues he raised in his State writ of error *coram nobis* regarding ineffective assistance of counsel.[6]  (Dkt. 26 at ECF 12-18.)

## DISCUSSION

### A.  STANDARD OF REVIEW

A *habeas* corpus petition is not a vehicle to re-litigate every issue previously determined in State court.  *Herrera v. Collins*, 506 U.S. 390, 401 (1993).  Rather, a State prisoner seeking *habeas* relief under 28 U.S.C. § 2254 ("Section 2254"), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

---

[6]  The Court construes Petitioner's *pro se* submissions in a manner most favorable to him. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (requiring courts to hold *pro se* pleadings to less stringent standards); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006) (the Court is obligated to construe a *pro se* submission "to raise the strongest arguments" it suggests).

Under Section 2254, a petitioner must show that the State court decision, having been adjudicated on the merits, is either: (1) "*contrary to*, or involved *an unreasonable application of*, *clearly established Federal law*, as determined by the Supreme Court of the United States," ***or*** (2) "based on *an unreasonable determination of the facts* in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (emphasis added).

As to the former, "clearly established law" is defined as "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A State court decision is "contrary to" clearly established law if the State court: (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court has on a set of "materially indistinguishable" facts. *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams*, 529 U.S. at 405). Under the "unreasonable application" clause, a federal *habeas* court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409; *see also id.* at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (emphasis in original); *Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal *habeas* court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

As to the latter, where a *habeas* petition challenges a State court's factual findings, Section

2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

Section 2254 thus embodies a "'difficult to meet' . . . and 'highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). But if "a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." *Williams*, 529 U.S. at 389.

## B. PROCEDURALLY DEFAULTED CLAIMS

Under 28 U.S.C. § 2254, as amended by AEDPA, a petitioner must comply with certain procedural requirements when filing an application for a writ of *habeas corpus*. While Petitioner's claims here appear to comply with the timeliness and exhaustion requirements, Respondent contends that two of Petitioner's claims—relating to the use of Petitioner's nickname at trial and improper remarks by the prosecutor during opening statements—are procedurally defaulted. The Court agrees.

### 1. Relevant Law

A federal court generally is precluded from reviewing a *habeas* claim if the State court's prior denial of that claim rests on an adequate and independent state ground. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1971). A petitioner's failure to comply with a State procedural rule qualifies as such an adequate and independent state ground, provided that (i) the State court actually "relied on the procedural bar as an independent

basis for its disposition of the case," *Harris*, 489 U.S. at 261-62 (internal quotation marks and citation omitted), and (ii) the State procedural rule is "firmly established and regularly followed." *See Cotto v. Herbert*, 331 F.3d 217, 239-40 (2d Cir. 2003). A State court's express reliance on a procedural ground as one basis for the denial of the claim precludes *habeas* review, even if the State court proceeds to consider the merits of the claim. *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). In determining whether to deny a *habeas* claim on that basis, however, federal courts "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" *Galarza v. Keane*, 252 F.3d 630, 637 (2d Cir. 2001) (quoting *Stinson*, 229 F.3d at 118).

A petitioner may obtain federal *habeas* review of a procedurally-defaulted claim, if the petitioner demonstrates either "cause for the default and actual prejudice," or that "failure to consider the claims will result in a miscarriage of justice (*i.e.*, the petitioner is actually innocent)."[7] *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). To establish cause for a procedural default, a petitioner must show "some objective factor external to the defense" that explains why he did not previously raise the claim. *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the failure to raise the claim previously had a substantial injurious effect on the

---

[7] A claim of actual innocence must be supported by "new reliable evidence" and is therefore "rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

petitioner's case such that he was denied fundamental fairness. *Reyes v. New York*, No. 99-cv-3628, 1999 WL 1059961, at *2 (S.D.N.Y. Nov. 22, 1999) (citing *Murray*, 477 U.S. at 494).

### 2. Procedural Bar as to Two of Petitioner's Claims

The Appellate Division found that Petitioner's claims related to (1) references to his nickname of "Crazy" during trial, and (2) improper remarks by the prosecutor during his opening statement, were "unpreserved for appellate review."[8]  *Ortiz*, 846 N.Y.S.2d at 371 (citing N.Y.C.P.L. § 470.05[2]).  Because the Appellate Division expressly based this determination on a State procedural rule, it constitutes an independent and adequate ground that bars federal *habeas* relief.  *Harris*, 489 U.S. 255 at 260-61.  These two grounds are therefore procedurally barred from *habeas* review unless Petitioner can establish "cause and prejudice" for the default or show that a miscarriage of justice will occur absent review.  Petitioner has failed to establish either.  Petitioner never brought claims of ineffective assistance of his trial attorney based on his failure to object to either of these two grounds alleged here.  *See Coleman,* 501 U.S. at 725 (the trial attorney's failure to object to such issues could constitute "cause" for a procedural default if a separate claim of ineffective assistance of counsel based on the alleged error has been brought and exhausted in state court); *see also Murray,* 477 U.S. at 488-89.  Petitioner also does not contend that he is actually

---

[8] The Appellate Division separately noted that in any event, any error in allowing references to the nickname or allowing the challenged remarks during opening statement constituted harmless error.  *See Ortiz*, 846 N.Y.S.2d at 371 (noting that "evidence of the defendant's guilt, without reference to the alleged error, was overwhelming, and there is no significant probability that the error contributed to the defendant's conviction").

innocent. Therefore, Petitioner has not shown good cause to excuse his failure to preserve these two claims, and the Court is barred from reaching the merits of these claims.[9]

---

[9] Even if the Court were to address the merits of Petitioner's claims concerning the use of his nickname and the prosecution's opening statement, those claims would fail. In determining whether a defendant was prejudiced by the government's use of a nickname, courts look to "the relevance of the defendant's nickname and the frequency of its use by the prosecution." *United States v. Farmer*, 583 F.3d 131, 145 (2d Cir. 2009). Courts have also looked to whether the name was "necessarily suggestive of a criminal disposition." *Id.* Finally, Petitioner must demonstrate that the nickname caused him to suffer "substantial prejudice, by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 147. Here, Petitioner complains that during Panameno's direct examination, the prosecutor referred to Petitioner as "Crazy" 19 times and Panameno referred to him as "Crazy" 20 times. (*See* Pet'r App. Br. at 14.) However, there was a practical reason for the use of this nickname: Panameno testified that he only knew Petitioner by that nickname and never knew his real name. (Tr. 25, 43:19-22, 53.) Moreover, the Court finds that "Crazy" is "not necessarily suggestive of a criminal disposition," *United States v. Dean*, 59 F.3d 1479, 1492 (5th Cir. 1995), even though the nickname was conferred on Petitioner when he joined MS-13 at the age of thirteen in El Salvador. (Tr. 497-98.) Finally, there was overwhelming evidence of Petitioner's guilt—including undisputed evidence that Petitioner committed the stabbing, and multiple witness accounts that Petitioner chased after the victim from which the jury could infer intent, *see infra* p. 15—and the Court finds no significant probability that the prosecution's use of Petitioner's nickname during Panameno's questioning contributed to the defendant's conviction.

Similarly, were the Court to address Petitioner's opening statement claim, it would also find that this claim fails on the merits. Petitioner specifically challenges the prosecution's statement to the jury that the victim's father "lost his son" at Petitioner's hands to arouse sympathy. (Tr. 12-13; *see* Pet'r App. Br. at 17.) Such a statement did not "manipulate[] or misstate[]" evidence or implicate other specific rights of the accused. *Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (noting that the relevant standard is whether a prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process"); *see also Johnson v. Ercole,* No. 05-CV-3563, 2007 WL 778478, at *4-5 (E.D.N.Y. Mar. 13, 2007) (prosecutor's comments, which allegedly aroused sympathy for the victim, inflamed the emotions of the jury and demonized the petitioner, were "not so egregious as to infect the trial with unfairness"). Moreover, the trial judge appropriately warned the jury during its charge that the opening statements were not evidence, (Tr. 636-37), and instructed the jury that its deliberations "must not . . . be influenced in any way, by bias, or prejudice or sympathy." (Tr. 640, 652). Finally, as the Court noted above, the weight of the evidence against Petitioner was heavy, which strongly "reduce[s] the likelihood that the jury's decision was influenced by argument." *Darden*, 477 U.S. at 182.

## C. NON-COGNIZABLE CLAIMS (EXCESSIVE SENTENCE)

Petitioner argues that his sentence was unduly harsh and excessive in view of the goal of rehabilitation, his "rough upbringing," and his youth, as he was 17 at the time of sentencing. (Dkt. 1 at ECF 9, 21-22, Dkt. 15 at ECF 17.) However, an excessive sentence claim is not subject to federal *habeas* review where a petitioner's sentence is within the range prescribed by State law. *Pina v. Kuhlmann*, 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003) (citing *White v. Keane*, 969 F. 2d 1381, 1383 (2d Cir. 1992)). Here, the sentence imposed was within the range prescribed by New York law for Murder in the Second Degree, which is a class A–I felony under New York law. *See* N.Y. Penal Law § 125.25 (McKinney 2012). A class A–I felony carries a minimum imprisonment term of not less than 15 years and not more than 25 years, and a maximum term of life imprisonment. *See* N.Y. Penal Law § 70.00(2)(a), 3(a)(i) (McKinney 2012). Petitioner was sentenced to an indeterminate sentence of 25 years to life imprisonment. (S. 16.) As Petitioner's sentence was within the range prescribed by State law, no federal constitutional issue is presented.[10] Petitioner is therefore not entitled to federal *habeas* relief on this ground.

## D. MERITS OF PETITIONER'S REMAINING CLAIMS

The Court now considers each of Petitioner's remaining claims on the merits. For the reasons set forth below, the Court finds that none of Petitioner's claims warrants the relief he seeks.

---

[10] The Court notes further that the State court also notified Petitioner that if he was convicted at trial he faced a sentence of twenty-five years to life, and Petitioner stated that he was not interested in any offers and wanted to go to trial. (*See* Supp. Hr'g 12-22.)

## 1. Sufficiency of the Evidence

Petitioner claims that his conviction was against the weight of the evidence and the State failed to prove his guilt beyond a reasonable doubt. (Dkt. 1 at ECF 5, 17.) The Court will construe the *pro se* petition as asserting a sufficiency of the evidence claim under the Fourteenth Amendment's Due Process Clause.[11] *See Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that due process prohibits "conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). With respect to this claim, the Appellate Division ruled on the merits that the evidence at Petitioner's trial was "legally sufficient to establish beyond a reasonable doubt that the defendant possessed the intent to kill the decedent." *Ortiz*, 846 N.Y.S.2d at 370-71. For the reasons set forth below, the Court concludes that this ruling was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record. Thus, this claim does not entitle Petitioner to *habeas* relief.

### i. Relevant Law

A petitioner "bears a heavy burden" when challenging the legal sufficiency of the evidence to support his State court conviction. *See United States v. Aguilar,* 585 F.3d 652, 656 (2d Cir.

---

[11] The Court notes that "weight of evidence" is the name of a specific claim under New York law and thus, is not cognizable on federal *habeas* review. *See McKinnon v. Superintendent, Great Meadow Correctional Facility,* 422 F. App'x 69, 75 (2d Cir. 2011) (citing *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles.")); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

2009).  On federal *habeas* review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *Aguilar*, 585 F.3d at 656; *Flowers v. Fisher,* 296 Fed. Appx. 208, 210 (2d Cir. 2008).  When considering the sufficiency of the evidence of a State court conviction, "[a] federal court must look to state law to determine the elements of the crime."  *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999).  Accordingly, in this case, the Court looks to New York law for the elements of Murder in the Second Degree.  Under New York law, a defendant is guilty of Murder in the Second Degree when "[w]ith intent to cause the death of another person, he causes the death of such person . . . ." N.Y. Penal Law § 125.25[1].

### ii.  Application of Law to Facts

Here, it is undisputed that Petitioner stabbed the victim at least twice, causing two wounds, including a deep cut that extended from the victim's upper arm to his elbow, and severed a major artery.  Although Petitioner testified on the stand that he stabbed the victim in self-defense, it was entirely reasonable for the jury to reject his account of events and accept the accounts of multiple witnesses who testified to seeing Petitioner chase the victim across a parking lot with a knife. Indeed, Petitioner provided a similar account of events to the police when he was arrested. Moreover, the victim did not have a weapon on him.  Under the circumstances, the Court finds that "the jury was free to infer [Petitioner's] intent [to cause death] from the very act of his stabbing [the victim]." *Vera v. Hanslmaier*, 928 F. Supp. 278, 284-85 (S.D.N.Y. 1996) (citations omitted); *People v. Turner*, 529 N.Y.S.2d 898, 899 (App. Div. 1988) ("Intent may be implied from the act

itself, or from the defendant's conduct and surrounding circumstances.").

Even if the sufficiency of the evidence were a debatable point, the factual findings of a State court must be presumed to be correct. 28 U.S.C. § 2254(e)(1). Accordingly, to prevail on his insufficiency claim, Petitioner would have to adduce "clear and convincing evidence" that he did *not* intend to cause death when he stabbed the victim. *Id.* Petitioner has not come close to making such a showing. He therefore is not entitled to *habeas* relief based on this ground.

### 2. Prosecutorial Misconduct (Remarks During Summation)

Petitioner argues that the prosecutor's "inflammatory remarks during his closing statement denied him a fair trial." (Dkt. 1 at ECF 8, 19-20.) Specifically, Petitioner contends that the prosecutor invited the jury to rely on improper considerations when he: (1) told the jury to "keep their eye on the ball"; (2) suggested that Petitioner "had tailored his testimony to the evidence elicited at trial"; (3) denigrated Petitioner's counsel; and (4) suggested that an alternate juror had sufficient medical knowledge to determine the nature of the victim's wounds. (*Id.*) With respect to this claim, the Appellate Division ruled on the merits that the prosecutor's challenged remarks during closing "constituted harmless error." *Ortiz*, 846 N.Y.S.2d at 370. For the reasons set forth below, the Court concludes that this ruling was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record. Thus, this claim also does not entitle Petitioner to habeas relief.

### i. Relevant Law

Prosecutors are permitted broad latitude during summation, and are permitted to respond to arguments by defense impugning the integrity of the case. *United States v. Tocco,* 135 F.3d

116, 130 (2d Cir. 1998); *United States v. Bautista*, 23 F.3d 726, 732 (2d Cir. 1994). A claim of prosecutorial misconduct during summation requires a court to consider "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citing *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)). There must be a showing that the petitioner "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). In determining whether the petitioner suffered such prejudice, a court must consider: "[(a)] the severity of the prosecutor's conduct; [(b)] what steps, if any, the trial court [could] have taken to remedy any prejudice; and [(c)] whether the conviction was certain absent the prejudicial conduct." *Id.* (citing *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)).

### ii. Application of Law to Facts

The first three of Petitioner's claims are easily addressed. First, the prosecutor's reminder to the jury to keep its "eye on the ball" does not rise to the level of prosecutorial misconduct. *Garcia v. Greiner*, No. 01-CV-2470, 2004 WL 943902, at *7 (E.D.N.Y. Apr. 28, 2004) ("The prosecutor can properly ask the jury not to be side-tracked by certain evidence and certain issues to focus on the issues that make out the prosecution's case."). Nor does the prosecutor's statement that Petitioner "tailor[ed] his testimony" to the evidence adduced at trial. *See Portuondo v. Agard,* 529 U.S. 61, 73 (2000) ("Allowing comment upon the fact that a [testifying criminal] defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate – and indeed, given the inability to sequester the defendant, sometimes essential – to the central

function of the trial, which is to discover the truth."). Finally, the prosecutor's remarks that the self-defense argument advanced by defense counsel was a "smokescreen," that defense counsel attempted to trick or fool the jury, and that defense counsel had coached Petitioner also do not rise to the level of prosecutorial misconduct. *See United States v. Resto*, 824 F.2d 210, 212 (2d Cir. 1987) (calling specific defense tactics "slick bits" and "slyness" and accusing defense counsel of "sleight-of-hand" was *not* prosecutorial misconduct).

The Court is more troubled, however, by the prosecutor's appeal to an "alternate juror's medical knowledge" and his comments on defense counsel's failure to call Petitioner's stepfather as a witness. However, whatever error may have resulted from the prosecutor's comments was harmless in light of the judge's curative instructions regarding Petitioner's failure to call his stepfather, (Tr. 649), and the fact that the alternate juror did not participate in the jury's deliberations (Tr. 668). In his curative instruction, the trial judge was explicit with the jury that Petitioner did not have the burden of proof or the obligation to call any witnesses. *See, e.g., Chalmers v. Mitchell,* 73 F.3d 1262, 1271 (2d Cir.) (such instructions "likely corrected any misperception the jury may have held" as a result of the prosecution's comments.); *Lemus v. Artuz*, 131 F. Supp. 2d 532, 536 (S.D.N.Y. 2001) ("In view of these prompt and repeated curative instructions, the prosecutor's inappropriate but brief comment could not possibly have materially affected the jury or rendered the trial fundamentally unfair."). Furthermore, even if the prosecutor and trial court both erred, there was overwhelming evidence of Petitioner's guilt, and there is no significant probability that these remarks contributed to the defendant's conviction. Petitioner's claim concerning prosecutorial misconduct therefore does not entitle him to relief in this forum.

### 3. Ineffective Assistance of Counsel

Petitioner argues that he was denied effective assistance of appellate counsel when counsel failed to raise the following issues: (i) that the State court lacked subject matter jurisdiction when the indictment was amended, (ii) that the sentence imposed was not applicable to his offense, and (iii) that he was denied a jury trial when the State court sentenced him to the maximum term. Petitioner previously raised this claim in his post-conviction application for a writ of error *coram nobis*. (Dkt. 26.) By Order dated October 18, 2011, the Appellate Division summarily denied Petitioner's application, *People v. Ortiz*, 931 N.Y.S.2d (N.Y. App. Div. 2011), and on July 16, 2012, the New York State Court of Appeals denied Petitioner leave to appeal, *People v. Ortiz*, 19 N.Y.3d 976 (N.Y. 2012). Because "[a] summary disposition constitutes a disposition 'on the merits'[,]" the State court's decision is entitled to AEDPA deference. *Hawthorne v. Schneiderman*, 695 F.3d 192, 196 (2d Cir. 2012) (*per curiam*) (citing *Harrington*, 562 U.S. at 98).

### i. Relevant Law

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that (a) his counsel's performance "fell below an objective standard of reasonableness," and (b) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688–94. With respect to the first of these requirements, there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. This deference is due because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002). Therefore,

a petitioner must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks omitted).

Although the Strickland test has two prongs, a court considering an ineffective assistance claim need not "address both components of the [*Strickland*] inquiry if the [petitioner] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Indeed, as the Supreme Court noted in *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* The Supreme Court has recently reaffirmed in the *habeas* context that "[w]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel," the court is required to "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen*, 131 S. Ct. at 1403). For this reason, it is scarcely surprising that "the great majority of habeas petitions that allege constitutionally ineffective counsel" fail. *See Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

### ii. The State Court Did Not Err in Denying Ineffective Assistance of Counsel Claims

***Appellate Counsel.*** The Court finds that the State court's decision on Petitioner's ineffective assistance of appellate counsel claims were not contrary to or an unreasonable application of clearly established Federal law. *See* 28 U.S.C. § 2254(d)(1). In the Appellate Division, Petitioner's appellate counsel summarized the proceedings below clearly and in a light favorable to Petitioner; made relevant citations to the record; argued for reversal based on four

grounds; and cited applicable case law, reflecting that he had fully researched the issues.[12] (*See generally* Pet'r App. Br.) Appellate counsel need not raise frivolous arguments on appeal; nor should counsel "'raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.'" *Smith*, 528 U.S. at 288. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). Under these circumstances, the Appellate Division was not unreasonable in rejecting Petitioner's claim of ineffective appellate counsel.[13]

**Trial Counsel.** To the extent Petitioner raises an ineffective assistance of **trial** counsel claim,[14] the Appellate Division's decision was also not contrary to, or an unreasonable application

---

[12] In an affirmation responding to Petitioner's *coram nobis* application, Petitioner's appellate attorney contended that there was no basis on which to proceed on Petitioner's *coram nobis* claims and that he raised all available meritorious claims on direct appeal. (Dkt. 26, Dowden Aff. at ECF 5-6.)

[13] In any event, the issues Petitioner argues that appellate counsel failed to raise on direct appeal would not have warranted federal *habeas* relief. Whether the trial court possessed subject matter jurisdiction over an amended indictment is solely an issue of New York law. *See People v. Case,* 42 N.Y.2d 98, 99-100 (1977). As explained above, federal *habeas* review is available only for violations of federal constitutional law and is not available for violations of State constitutional law. *See supra* p. 13. As to Petitioner's second and third claims of ineffective assistance of appellate counsel, this Court has already determined that the sentence imposed on Petitioner was applicable to his offense, not excessive, and did not violate his constitutional rights. *See id.*

[14] Petitioner did not raise this ground in either his *habeas* petition in federal court or in his application for a writ of error *coram nobis* in State court. Petitioner raises it for the first time in his "Traverse Opposition to Respondent's Answer and Memorandum of Law" in this *habeas* proceeding. (*See* Dkt. 15 at ECF 17-18.) The Court notes, however, that on direct appeal, the Appellate Division nevertheless ruled that Petitioner was not deprived of effective assistance of trial counsel. *See Ortiz*, 846 N.Y.S.2d at 370.

of, clearly established federal law. Specifically, Petitioner claims that his trial counsel was "ineffective for failing to object to the misconduct of the Prosecutor at trial." (Dkt. 15 at ECF 17.) A review of the trial record, however, shows that Petitioner received a vigorous defense and that Petitioner's trial counsel **did** object to the prosecutor's purported misconduct by moving for a mistrial based on "multiple errors" in the prosecution's closing. (Tr. 627-631 (enumerating objections).) Trial counsel also moved for a trial order of dismissal. (Tr. 425-27.) Petitioner's trial counsel cross-examined prosecution witnesses (Tr. 53-75, 79-94, 107-09, 121-36, 147-50, 236-99, 303-324, 356-69, 399-419), interposed objections (Tr. 163, 184, 436, 442), presented opening and closing arguments (Tr. 16-20, 546-593), elicited favorable witness testimony (Tr. 431-35, 443-44, 445-57), and otherwise provided Petitioner meaningful representation. Petitioner's counsel cannot be faulted for the jury's finding that Petitioner was guilty, despite counsel's argument at trial that Petitioner acted in self-defense. (Tr. 490, 493-96.) Accordingly, Petitioner's application for *habeas corpus* relief on these grounds is denied.

## CONCLUSION

For the foregoing reasons, Petitioner's application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is DENIED. Because Petitioner fails to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court is directed to enter judgment and close this case.

SO ORDERED:

*/s/ Pamela K. Chen*_____
PAMELA K. CHEN
United States District Judge

Dated: October 13, 2016
        Brooklyn, New York